[Civ. No. 3112.   Third Appellate District.—April 14, 1927.]

## W. J. ALEXANDER, Appellant, v. MANTON JOINT UNION SCHOOL DISTRICT, etc., Respondent.

[1] SCHOOL LAW — DISMISSAL OF TEACHERS — PROCEDURE. — The procedure for the dismissal of teachers, as prescribed by section 1609 of the Political Code, applies to all teachers, whether permanent or employed only for the school year, or whether principal or subordinate in degree of authority.

[2] ID.—DISQUALIFIED TEACHER—EVIDENCE—VERDICT.—In this action by a discharged school principal for damages for alleged breach of contract, the testimony taken at the trial, and which was substantially the same as that presented before the board of trustees in its investigation of the charges against plaintiff which resulted in the order for his dismissal, showed that plaintiff was wholly disqualified for the proper performance of the duties of a principal of a public school, or, for that matter, to discharge the duties of a subordinate teacher in such school, and amply supported the verdict for defendant.

[3] ID.—PLEADING—ANSWER—TRIAL BEFORE TRUSTEES—DISMISSAL—EVIDENCE—INSTRUCTIONS.—In such action, the trial court did not err in refusing to strike out portions of defendant's answer setting up the trial proceedings before the board of trustees, eventuating in the dismissal of plaintiff; neither did the trial court err in admitting evidence of acts and conduct of plaintiff as a teacher subsequent to a prior service upon him of an abortive notice of dismissal without public hearing; and the trial court properly instructed the jury that the school trustees "were au-

---

1. See 23 Cal. Jur. 132.

thorized by the law to dismiss the plaintiff as principal . . .
during the school term and for cause and after a fair and im-
partial public hearing."

(1) 4 C. J., p. 1105, n. 43; 35 Cyc., p. 1092, n. 10. (2) 35 Cyc.,
p. 1097, n. 55. (3) 35 Cyc., p. 1089, n. 91, p. 1093, n. 21.

APPEAL from a judgment of the Superior Court of
Tehama County. James W. Bartlett, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. J. Cheatham and James T. Matlock for Appellant.

Fred C. Pugh and Curtiss E. Wetter for Respondent.

HART, J.—This cause has previously been considered by
this court upon an appeal by the defendant from the judg-
ment entered upon a directed verdict in favor of the plain-
tiff. The judgment was reversed and the cause remanded
for a new trial. (*Alexander* v. *Manton Joint Union School
District in Tehama and Shasta Counties*, 73 Cal. App. 252
[238 Pac. 742].) At the second trial, the verdict of the
jury, by which the cause was tried, was in favor of the de-
fendant, and judgment was entered accordingly. The plain-
tiff has appealed from said judgment.

The plaintiff, a teacher of the defendant under a contract
with the latter, was dismissed as such teacher upon charges
preferred by the trustees of said district. This action was
instituted by plaintiff, under the authority of section 1609,
subdivision 5, of the Political Code, to secure a judicial
determination of the question whether the charges were true
or false, and thus, if the charges were determined to be
false or unfounded, obtaining a judgment nullifying the
action of the defendant in dismissing him from his em-
ployment as teacher of its school.

The issues made by the pleadings are stated in the opinion
of this court by Presiding Justice Finch on the former ap-
peal as follows:

"The complaint alleges that on or about the 12th day of
May, 1923, the plaintiff and the board of trustees of the
defendant district—'entered into an agreement whereby
plaintiff was employed as principal in the said Manton Joint

Union School District at a salary of $2,000 per year payable as follows: $200 per month for 10 months, beginning such payments on October 3, 1923; . . . that pursuant to said agreement plaintiff performed the duties of principal of said Manton Joint Union School District continuously from the 10th day of September, 1923, to the 10th day of March, 1924, at which time the said board of trustees wrongfully and without any cause discharged plaintiff and refused to permit him to perform the duties of principal any longer; . . . that under said agreement said board of trustees have paid plaintiff the sum of $1,200 and no more, and by reason of the discharge of plaintiff as aforesaid, plaintiff has been damaged in the sum of $800.'

"The answer admits the employment and the performance by the plaintiff of services thereunder up to the 10th day of March, 1924, as alleged in the complaint; denies that the board of trustees 'wrongfully . . . or without cause, or at all discharged plaintiff on the 10th day of March, 1924'; alleges that the board of trustees, 'on the 24th day of March, 1924, dismissed plaintiff for unprofessional conduct, incompetency, evident unfitness for teaching, and persistent violation of and refusal to obey the school law of California and reasonable rules prescribed for the government of public schools in the county of Tehama'; and admits that 'plaintiff is entitled to be paid his salary under the provisions of his contract of employment for the period from March 10th to March 24th.'

"As a further and separate defense, the answer alleges that 'during the school year of 1923, and to and including the 10th day of March, 1924, plaintiff was guilty of . . . unprofessional conduct, incompetency, evident unfitness for teaching, persistent violation of and refusal to obey the school laws of California, and the reasonable rules prescribed for the government of public schools of the county of Tehama; that on the 12th day of March, 1924, charges were duly preferred in writing against plaintiff . . . for the causes in paragraph II hereof set forth, a copy of which charges is hereto annexed . . . and made a part hereof'; that a copy of such charges and a notice of the time and place of hearing to be had thereon were duly served upon the plaintiff; that said hearing was had March 24, 1924,

and 'witnesses were called and sworn and gave testimony in proof of said charges and . . . said board of trustees upon the affirmative vote of a majority thereof, all of whom had been present throughout the entire hearing sustained said charges 'and dismissed plaintiff as principal of said school.' ''

On February 25, 1924, the trustees caused to be served upon plaintiff a notice, signed by three of the members of the board of trustees, to the following effect: ''You are hereby notified that your services will not be required after March 10, 1924.'' On March 12, 1924, the plaintiff was served with a second notice signed by the same trustees and which read as follows: ''You are hereby again notified that our action on February 25, 1924, asking and demanding your dismissal, is final, and your services discontinued from that date. You will, therefore, be governed accordingly.'' The plaintiff was either at the time of the giving of the last-mentioned notice or at least upon the same day served with a copy of the following charges preferred against him by the trustees, the same being dated March 12, 1924:

''You will please take notice that the Board of Trustees of Manton Joint Union School District of Tehama County, California, request and demand your resignation and dismissal as principal of said Manton Joint Union School District for the following causes and upon the following grounds committed and suffered to be done by you for the school year 1923–1924 in the manner following, to-wit:

''Upon unprofessional conduct committed by you, for cursing and using profane and opprobrious language towards and addressed to a Trustee of said District in the presence of said Trustee and in the presence of the pupils of said District on the School Grounds of said School on Feb. 19, 1924.

''By continuously disobeying the orders and requests of said Board of Trustees during the school term of 1923–1924, to-wit: To maintain order on the school grounds and see that the rights of the smaller pupils were respected. By not forbidding vulgar and profane language on the school grounds. By refusing innumerable times to accept or obey any orders for the benefit and welfare of the school from the trustees.

"Incompetence by reason of defective hearing, and being unable thereby to hear and understand ordinary conversation, and thus unable to hear recitations or make corrections when necessary to the classes under his instructions, and being also prevented thereby from hearing vile and obscene language used in the school room.

"Refusal to obey reasonable rules prescribed for government of said public school by refusal to co-operate with any of the educational agencies of the offices of the Superintendents of Schools of Tehama and Shasta Counties. By refusing to allow pupils to participate in the benefits of the County Library the said District allowing $160.00 for said purpose.

"By failing to co-operate with County Nurse and attendance officer in putting over the health program and attendance program prescribed by the County Board of Education. By ignoring and refusing to discuss the program of the Music Supervisor of Tehama County. By refusing to make any report to the attendance officer of absent pupils.

"By refusing to discuss school problems with the Superintendent of Schools of Tehama County regarding the benefit and welfare of the school, and by waving an iron ram-rod over her head, and stated he would not listen to what said Superintendent had to say, notwithstanding the fact that said Superintendent had been requested to talk on said matters by said Board of Trustees.

"And you are further notified that the hearing of the above charges will be heard before the Board of Trustees of said District at the School House in said District on the 24th day of March, 1924, at 11 a. m. of said day."

The foregoing charges were signed by three of the trustees.

The trustees of defendant apparently assumed that the notice to plaintiff dated February 25, 1924, declaring his dismissal as a teacher and demanding his resignation, operated *ipso facto* to effect a dismissal, for, upon the giving of said notice they immediately appointed a successor to plaintiff, who likewise took charge of the school as the principal thereof in the place and stead of the plaintiff.

The time fixed for the hearing of the charges in the notice of March 12th given to the plaintiff was the twenty-fourth

day of March, 1924. A trial of the plaintiff upon the charges was held upon said day, with the result that the plaintiff was dismissed from further service as a teacher of said school.

Plaintiff, among other contentions, maintained at the first trial and also on the appeal from the judgment in the action as thus tried, "that the court was without jurisdiction to determine the truth or falsity of the charges; that, since the board had given plaintiff notice of dismissal without a trial and had placed another teacher in charge of the school, it had no authority to try him thereafter, because he was no longer a teacher in the school." The court below at the former trial seems to have taken that view of the case and, accordingly, directed the jury to find for the plaintiff. This court, in disposing of the former appeal, disapproved the theory upon which the case was then determined, in the following language: "If the trustees have authority to dismiss a teacher for cause without a trial, then in case of a wrongful dismissal he would undoubtedly have a cause of action on his contract, and in such action the court would have jurisdiction to determine, as in other alleged breaches of contract, whether there was just cause for his dismissal. If the trustees have not such authority, then the attempted dismissal of plaintiff was abortive, and the subsequent trial of the charges against him was a proper procedure for the termination of the contractual relations between the parties. If the trustees had attempted to dismiss plaintiff, after a trial upon charges preferred against him, but upon insufficient notice, or without any notice of the hearing, it would hardly be contended that they might not thereafter treat their attempted dismissal as a nullity and proceed anew to a hearing after a sufficient notice thereof. No reason appears why they could not pursue a similar course where no charges had been preferred, no notice given and no hearing had."

Supporting the foregoing views, the opinion cited and quoted an excerpt from the case of *White* v. *Wohlenberg*, 113 Iowa, 236 [84 N. W. 1026], a case which, in the facts, is parallel to this.

The opinion also called attention to the following provision of subdivision 5 of section 1609 of the Political Code: "Nothing in this act shall be construed in such manner as

to deprive any teacher of his rights and remedies in a court of competent jurisdiction on a question of fact and law."

The opinion, referring to the foregoing provision, among other things, said: "Section 1609 prescribes the grounds and the proceedings for the dismissal of a teacher for cause. It would be difficult to give the provision quoted any meaning other than that, upon the discharge of a teacher for any alleged cause, he is entitled to maintain an action in court to determine the truth or falsity of the charges preferred against him."

For the reasons stated in the foregoing excerpts from our opinion, and for errors growing out of the rulings of the court regarding the question of the admissibility of certain proffered testimony, the judgment entered on the former trial of the action was reversed.

To support the present appeal, the points above referred to, with other points, are urged, but the disposition of the former appeal embraces the law of the case as to all points, at least those fundamentally affecting the merits of the case, which it was necessary to decide to properly determine the appeal and which were decided therein.

For a reversal of the judgment with which we are presently concerned, the plaintiff also urges: 1. That subdivision 5 (j) of section 1609 of the Political Code upon which the charges against him purport to be founded has exclusive reference to the dismissal of "permanent teachers"; that, since he was not a "permanent teacher," but was by contract with the trustees employed by them as a teacher for a definite or determinate period of time—that is, for the school year only—the proceeding before the trustees purporting to constitute a public hearing of the charges was wholly nugatory or of no legal force or effect; 2. That section 1609 of the Political Code is unconstitutional and consequently void; 3. That the verdict is not supported by the evidence; 4. That the court erred in refusing to grant plaintiff's motion to strike from the answer certain of its allegations, and also erred in certain rulings upon the evidence; 5. That the court's charge to the jury involved in a certain particular an erroneous statement of the law.

The point first stated is concluded by the decision of this court on the former appeal. [1] As will be observed from the last above given extract from the opinion, we in effect

held that the procedure for the dismissal of teachers, as prescribed by section 1609, applied to all teachers, whether permanent or employed only for the school year, or whether principal or subordinate in degree of authority. The conclusion thus arrived at is in perfect accord with the provisions of section 1609 relative to the dismissal of teachers. Paragraph (i) of the fifth subdivision of said section expressly vests the board of trustees of the school district with the power "to dismiss probationary teachers during the school year for cause only, as in the case of permanent teachers." It is clear that the plaintiff was only a probationary teacher or a teacher employed for the school year. Certainly he was a principal of the school and principals are expressly included among the teachers mentioned in subdivision 5 (j) of section 1609 against whom charges may be preferred and who may, if the charges are sustained, be dismissed by the board of trustees upon a public hearing thereof. Section 1609, subdivision 5 (j), specifically sets forth the grounds upon which a permanent teacher, or a principal, whether permanent or probationary, may be dismissed and the two paragraphs immediately following subdivision 5 (j) prescribe the procedure to be pursued to effect such dismissal, if, under the proofs, a dismissal is justly to be ordered. The grounds of dismissal as enumerated in the first paragraph of said subdivision are "immoral or unprofessional conduct, incompetence, evident unfitness for teaching, persistent violation of or refusal to obey the school laws of California, or reasonable rules prescribed for the government of public schools."

The counsel for the plaintiff has not pointed out wherein section 1609 of the Political Code offends any provision or mandate of the state constitution, and, therefore, as the section, so far at least as are concerned the provisions affecting the questions involved in the present controversy, does not appear to be out of gear with the constitution, we will not assume the burden of subjecting the section to a critical analysis (which, without the aid of counsel, would probably be required) to ascertain whether in any respect it does not square with some particular provision of our organic law.

[2] The next consideration to which attention is invited involves the contention that the verdict of the jury is not

afforded support by the evidence. An examination will show, as thus we have been convinced, that there is no force to this contention. The written charges filed before the trustees against the plaintiff, together with notice to the latter that the same would be heard on the twenty-fourth day of March, 1924, at the hour of 11 o'clock A. M., at the schoolhouse of said district, were introduced in evidence. The notice was dated March 12, 1924, and was personally served on the plaintiff on said day by M. L. Bouton, constable of Sierra township, which embraces a portion of the Manton Joint Union School District. Bouton was subsequently appointed by the county superintendent of schools as a member of the board of trustees of said district, to fill a vacancy on said board. He testified that he was present as such trustee on the 24th of March, when the hearing of the charges was had; that the plaintiff did not attend the hearing, although, when he served him with the notice and a copy of the charges, the plaintiff was at his cabin, which was situated not more than seventy-five yards from the schoolhouse. Mads Neilsen, clerk of the board of trustees, testified that he was present at the hearing; that testimony in support of the charges was taken and that, on the conclusion of the taking of the testimony, the board, after considering and discussing the testimony, by a vote of four to one of the trustees, found the charges to be true. At the trial of this action, Neilsen testified that plaintiff had ordered magazines and other periodicals for the use of the school without authority from the trustees so to do; that, upon instruction from the board, he notified plaintiff to countermand the order for said publications; that, on one occasion, he was urgently asked by certain persons residing near the school to go to the school grounds and put a stop to fighting and the use of profane language which were being indulged in between and by the pupils; that he went to the school grounds while a recess of the school was pending and found that the complaint thus made against the conduct of the male pupils was well founded; that he spoke to plaintiff about the matter and remarked to him (plaintiff) that he was not maintaining proper discipline over the boys while they were on the grounds during the recess periods, to which plaintiff replied by calling the witness a ''d——n liar.'' Miss Lang, county superintendent of Tehama County

during the plaintiff's employment as principal of the Manton High School, testified that the plaintiff's management of the school was not in accord with instructions given by her as to the course of study outlined, in that, under his method, there was not that co-ordination between his school and the Red Bluff High School which would entitle the pupils earning the same to the high school credits; that, in her interview with the plaintiff, she attempted to impress upon him the "absolute necessity" of such co-ordination, so that the pupils would not lose the credits to which as such they were entitled; that she called his attention to the fact that the pupils had not received such credits; that the plaintiff became very angry with witness and, at the same time, having a "ramrod" in his hand, "he waved it over my head and in front of my face." Miss Lang testified to other acts of insubordination on the part of plaintiff with reference to the curriculum of his school and as to the unauthorized ordering by him for the school of certain magazines, the bills for which she refused to approve, and proceeded: That in the fall of 1923 she called for the assembling of a teachers' institute for Tehama County, it being her legal duty as county superintendent of schools to do so in each year (Pol. Code, sec. 1560), that she gave the plaintiff due legal notice of the time and place of the holding of the institute, and that he failed to attend, giving no reason, so far as she could remember, for his absence therefrom. The section of the Political Code last mentioned makes it the duty of every public school teacher of the county to attend the annual institutes, unless prevented for some valid cause or reason. The witness, as did other witnesses, testified that the plaintiff's power to hear was so much impaired that he was not always able to understand what others would say to him in the ordinary conversational tone of voice and that questions propounded to him generally had to be repeated to him before he could understand them. In fact, the plaintiff, while being examined as a witness at the trial of this action in the court below, admitted that he was "hard of hearing," and the manner of his answers to questions there propounded to him by counsel clearly enough appears in the record before us to substantiate that statement. Miss Lang testified (there being no objection to the question eliciting that testimony) that (as obviously is true) chronic auricular

nerve trouble to the extent of seriously impairing the sense of hearing constitutes a disqualification in a person as a teacher of a public school. A number of pupils of the school testified that certain other pupils conducted themselves in school, while it was in session, in a disgraceful manner; that some of the offending pupils, during the school sessions, had been heard to call the plaintiff opprobrious names, such as "d——n fool"; that, in fact, they addressed or referred to him during the school sessions in language even more scurrilous and unfit to be repeated herein. It was shown that, immediately after the attempted but abortive order of dismissal and the notice thereof under date of February 23, 1924, and after the legally futile attempt by the board of trustees, on making said order and giving said notice, to appoint and install a successor to plaintiff as principal, the latter induced a number of the pupils to absent themselves from the school and attend a school conducted by him at his residence, near the schoolhouse. The theory upon which plaintiff proceeded in pursuing that course was, manifestly, that the notice of his dismissal of February 23, 1924, was legally ineffective. But it is not necessary further to review herein the testimony presented by the defendant in support of the charges upon which plaintiff was dismissed by the trustees as principal of the school. It is enough to say that the testimony tending to show that plaintiff was wholly disqualified for the proper performance of the duties of a principal of a public school, or, for that matter, to discharge the duties of a subordinate teacher in such school, amply supports the verdict. Substantially the same testimony was presented before the board of trustees in its investigation of the charges against the plaintiff which resulted in the order of dismissal.

[3] The motion to strike out certain parts of the answer and the objections to certain evidence were predicated upon the general proposition that the notice of dismissal of February 23d, to take effect on March 10th, legally operated as a dismissal of plaintiff, and that the trial of the charges on March 24th, in pursuance of the notice given plaintiff on March 12th, was hence nugatory and without effect. The theory of that proposition was and is that (as we have seen the counsel for plaintiff contends) there is no procedure prescribed by law for a public hearing of charges

against a probationary teacher and his dismissal for cause upon such a hearing; that, therefore, the allegations of the answer setting up the proceedings before the trustees on March 24th, eventuating in his dismissal by the trustees, were immaterial and should have been stricken out and, consequently, evidence of acts and conduct of the plaintiff as a teacher subsequent to the date of the service upon him of the notice of dismissal of February 25th and which tended to substantiate the charges set forth in the notice of March 12th, was not only immaterial and irrelevant, but prejudicial to the rights of the accused at the trial. These points are disposed of adversely to the position of the plaintiff thereon by the earlier discussion herein. The objection by plaintiff to the following part of the court's charge to the jury has likewise been disposed of: "Said trustees were authorized by the law to dismiss the plaintiff as principal of said school during the school term for cause and after a fair and impartial public hearing."

There are certain other objections to the court's rulings as to the legal propriety of certain evidence which do not merit special notice herein.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 13, 1927, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 13, 1927.